UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAVON AARON,

                              Plaintiff,

                    -against-

KEYSER, et al.,

                              Defendants.

**OPINION AND ORDER**

21-CV-5258 (PMH)

PHILIP M. HALPERN, United States District Judge:

        Shavon Aaron ("Plaintiff"), proceeding *pro se*, initiated this action on June 11, 2021, bringing claims under 42 U.S.C. § 1983 against the following individuals: (1) Superintendent of Green Haven Correctional Facility (the "Superintendent"); (2) Director of the Office of Special Investigations ("Director of OSI"); (3) Correction Officer S.  Keyser ("Keyser"); (4) Correction Officer Preston ("Preston"); (5) Sergeant Malark ("Malark"); (6) K-09-05 (a dog); and (7) John and Jane Does. (Doc. 1). The Court, by Order dated September 8, 2021, dismissed, *inter alia*, (1) all claims against the Superintendent and the Director of OSI as lacking personal involvement in the events underlying her claims; (2) all claims against K-09-05 because it is not a "person" under § 1983 and does not have the capacity to be sued; and (3) directed the Clerk of Court to issue summonses as to Malark, Keyser, and Preston. (Doc. 4).[1] Plaintiff was directed to serve the summons and complaint on each Defendant within 90 days of the issuance of the summonses. (*Id*.)  Summonses were issued concerning Malark, Keyser, and Preston on September 9, 2021. (Doc. 5).

---

[1] This case was assigned to this Court on September 7, 2021. (Sept 7, 2021 Entry).

On May 9, 2022, Malark, Keyser, and Preston filed a motion to dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 25-26). Thereafter, Plaintiff filed her First Amended Complaint, the operative pleading. (Doc. 29, "Am. Compl.").  The Amended Complaint presses twelve claims for relief as follows: (1) failure to train employees asserted against Commissioner Annucci ("Annucci"), Director of OSI, and the Superintendent; (2) failure to train K-9-05 dog asserted against Keyser and Director of OSI; (3) deliberate indifference to a serious medical need asserted against Keyser, Preston, and Malark; (4) failure to implement policy for medical treatment of visitors asserted against the Superintendent; (5) retaliation by denial of access to medical treatment asserted against Preston and Malark; (6) retaliation by theft and destruction of property asserted against Malark; (7) unreasonable search based on excessive force asserted against Keyser; (8) failure to document injuries asserted against Keyser; (9) implementation of unconstitutional policy asserted against Annucci; (10) allowance of unconstitutional acts against a prisoner asserted against Annucci, Director of OSI, and the Superintendent; (11) failure to implement policy for medical attention to visitors asserted against Annucci and the Superintendent; and (12) unreasonable search based on sexual conduct asserted against Keyser. Of the Defendants named across the various claims for relief, Keyser, Malark, and Preston have appeared in this action, and only Preston and Malark have been served. (Docs. 10, 14, 19).

Defendants Malark, Preston, and Keyser, in compliance with this Court's Individual Practices, filed a letter on June 21, 2022 seeking a pre-motion conference before filing a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). (Doc. 30). Plaintiff did not respond to the pre-motion conference request and, on July 20, 2022, the Court

issued an Order waiving its pre-motion conference requirement and setting a briefing schedule. (Doc. 31; *see also* July 20, 2022 Entry).

Defendants Malark, Preston, and Keyser, in accordance with the briefing schedule set by the Court, filed their motion to dismiss on August 31, 2022. (Docs. 41-42, "Def. Br."). Plaintiff served her opposition papers on November 18, 2022 (Doc. 51-1, "Pl. Opp."), and Defendants filed their reply papers on December 13, 2022 (Doc. 49, "Reply Br.").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## **BACKGROUND**

On or about October 23, 2020, Shavon Aaron visited her husband, Eon Shepherd, at Green Haven Correctional Facility ("Green Haven"). (*See* Am. Compl. at 4).[2] Upon entering the facility, Plaintiff alleges she underwent a search by Keyser and his K-9 dog wherein the dog "sniff[ed] [her] private areas." (*Id.*). Plaintiff lodged a complaint with the Superintendent about the K-9 dog search, but did not receive a response. (*Id.*).  Plaintiff returned to Green Haven to visit her husband the following day. (*Id.*). Despite her requests not to be touched by the K-9 dog, Plaintiff underwent another search by Keyser and his K-9 dog. (*Id.*). The K-9 dog allegedly put his nose in Plaintiff's crotch area, touched Plaintiff's outer leg, and bit Plaintiff's buttocks. (*Id.*).  Keyser pulled the K-9 dog back immediately after the bite stating that the dog is not supposed to do that, and concluded the search. (*Id.* at 5).

Plaintiff alleges that she was "shaken up" and her "buttocks were hurting" as a result of being bitten. (*Id.*). She further alleges that she requested medical attention, but that Keyser ordered her to leave the room. (*Id.*). Plaintiff exited and reported the incident to "Correctional Officer Keith" and again requested medical treatment (*Id.* ). Officer Keith informed Plaintiff that he would

---

[2] Citations to the Amended Complaint correspond to the pagination generated by ECF.

notify the K-9 unit supervisor. (*Id*.). Plaintiff then requested to leave the facility, but was told she could not leave because a facility count was underway. (*Id*.). Plaintiff proceeded to visit with her husband. (*Id*.).

Plaintiff's husband spoke to Preston about his wife being bitten by the K-9 dog and requested to speak to a supervisor concerning her request for medical attention. (*Id*.). Preston stated she was unaware of Plaintiff's bite at the time, but agreed to notify her supervisor. (*Id*. at 5-6). After a supervisor did not appear, Plaintiff's husband re-iterated his wife's request to see a supervisor and receive medical care, but Preston refused to call medical personnel. (*Id*. at 6). Malark, who was allegedly a supervisor at the time, came to the visiting area to speak with Preston but did not speak with Plaintiff. (*Id*.). No medical attention was provided to Plaintiff and an incident report was never created. (*Id*. at 6-8).

Plaintiff left the prison approximately an hour later and when the count completed. (*Id*. at 6). While Plaintiff was gathering her belongings, Preston allegedly screamed at Plaintiff's husband and stated that she would make sure Plaintiff does not "return to the facility to sue anyone." (*Id*. at 6-7). Plaintiff exited the visiting area and was informed that the OSI supervisor was aware of the dog bite and would come interview her, but the interview did not take place. (*Id*. at 7).

Plaintiff returned to Virginia where she alleges that she received medical treatment for her physical injuries. (*Id*.). She then emailed OSI as well as "DOCCS diversity management" to inform them of the dog bite and her injuries. (*Id*.). An assistant investigator contacted Plaintiff on behalf of the prison to collect documents and information regarding the incident. (*Id*.). Plaintiff further alleges that she did not receive a response from prison officials regarding her request for a therapist to treat nightmares, fear, depression, and anxiety that resulted from being bitten by the K-9 dog. (*Id*. at 7, 9).

4

After the incident, Plaintiff claims that Preston issued a false misbehavior report against Plaintiff's husband. (*Id*. at 8). Plaintiff further alleges that after the incident Malark allowed food and clothing items to be stolen from several packages that Plaintiff sent to her husband. (*Id*. at 8-9). Plaintiff also avers that Malark informed Plaintiff's husband that he would receive his packages intact if his wife dropped her complaint. (*Id*. at 9). Plaintiff has visited her husband at Green Haven several times since being bitten. (*Id*. at 10).

This litigation followed.

## STANDARD OF REVIEW

I.     Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id*. (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286

(S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.     Federal Rule of Civil Procedure 12(b)(5)

Rule 12(b)(5) of the Federal Rules of Civil Procedure provides "the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint." *Soos v. Niagara Cty.*, 195 F. Supp.3d 458, 463 (W.D.N.Y. 2016). When a defendant challenges service of process, the plaintiff bears the burden of proving, through admissible evidence, the adequacy of service. *Corrado v. New York Unified Court Sys.*, 163 F. Supp. 3d 1, 13 (E.D.N.Y. 2016), *aff'd* 698 Fed. App'x 36 (2d Cir. 2017). The Court looks to Rule 4 of the Federal Rules of Civil Procedure when deciding a motion to dismiss for insufficient service of process. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp.2d 54, 64 (S.D.N.Y. 2010); *see also Salim v. Cnty. Of Erie*, No. 15-CV-00418A, 2018 WL 7133268, at *5 (W.D.N.Y. Dec. 19, 2018), *adopted by* 2019 WL 330762 (W.D.N.Y. Jan. 25, 2019). When considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, the Court must look to matters outside the complaint to determine whether it has jurisdiction. *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

III.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL

7

3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

IV.   <u>Documents Considered</u>

Plaintiff, in her opposition, submitted the following extraneous items on the extant motion: (1) Declaration of Eon Shepherd; (2) Eon Shepherd's March 29, 2019 Complaint to the OSI; (3) Declaration of Kenneth Bryant; (4) Medical News Today online article titled *What happens if a dog bite gets infected?* Dated November 12, 2019; (5)  photographs of Plaintiff's injured buttox; (6) Eon Shepherd's November 17, 2020 grievance to Green Haven and corresponding appeal statement; (7) New York State Department of Corrections and Community Supervision ("DOCCS") Directive 0700; (8) Declaration of Tayonda Estrada; (9) Declaration of Cherrie Jeffress; (10) Plaintiff's March 30, 2020 letter to Annucci; (11) Plaintiff's November 1, 2020 letter to Annucci; (12) Plaintiff's December 29, 2021 letter to Annucci; and (13) Plaintiff's June 30, 2022 letter to Annucci. (Pl. Opp. at 27-73) (collectively the "Extraneous Documents").

The Court, in deciding a Rule 12(b)(1) motion, "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Indeed, on such a motion, the Court "may consider

affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," along with "matters of which judicial notice may be taken." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted). Similarly, on a Rule 12(b)(5) motion, the Court "court must look[ ] to matters outside the complaint" to determine jurisdiction. *Kelly Toys Holdings, LLC. v. Top Dep't Store*, No. 22-CV-00558, 2022 WL 3701216, at *5 (S.D.N.Y. Aug. 26, 2022) (*citing Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016)).

In deciding a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)).

The Court declines to consider Plaintiff's Extraneous Documents. First, the Extraneous Documents shed no light on the Court's inquiries herein made pursuant to Fed. R. Civ. P. 12(b)(1) and (5). Second, the Court declines to consider the Extraneous Documents because they are not integral to the Amended Complaint and do not form the basis of Plaintiff's claims at issue on this motion. Nor does the Complaint herein rely on the documents Plaintiff appends or are facts of which the Court may take judicial notice. Simply put they are not helpful to the Court's 12(b)(6) analysis. Additionally, several of Plaintiff's exhibits constitute improper hearsay; and in any event, the Court cannot wade into fact and credibility determinations by considering hearsay documents that are not permitted to be considered on a motion of this type.

The Court, consequently, will not consider the Extraneous Documents.

## ANALYSIS

I.   Fed. R. Civ. P. 12(b)(1): Eleventh Amendment Immunity and Standing

First, Plaintiff proceeds herein against Commissioner Annucci. (Doc. 29). Insofar as Plaintiff intends to press claims under 42 U.S.C. § 1983 against Annucci in his official capacity, those theories of liability are barred by the Eleventh Amendment. [3] *See Fernandez v. Superintendent, Downstate Corr. Facility*, No. 20-CV-10287, 2022 WL 443646, at *4 (S.D.N.Y. Feb. 14, 2022) ("To the extent plaintiff brings claims against Supt. Morton in his official capacity as superintendent, those claims are barred by the Eleventh Amendment."); *Brown v. Annucci*, No. 19-CV-09048, 2021 WL 860189, at *3 (S.D.N.Y. Mar. 8, 2021) ("The immunity recognized by

---

[3] To the extent Plaintiff alleges claims against Annucci in his individual capacity, such claims are dismissed as Plaintiff failed to allege personal involvement. Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 676).

the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."); *Santiago v. D.O.C.C.S.*, No. 20-CV-04530, 2020 WL 4505706, at *1 (S.D.N.Y. Aug. 5, 2020) ("Plaintiff names DOCCS, a state agency, as a Defendant in his Complaint. However, state agencies, including DOCCS, and state officials acting in their official capacities are generally not 'persons' subject to suit under § 1983."); *Czerwinski v. New York State Dep't of Corr. & Cmty. Supervision*, 394 F. Supp. 3d 210, 227 (N.D.N.Y. 2019) ("There can be no dispute that DOCCS is an agency and arm of the State of New York and, therefore, entitled to New York's Eleventh Amendment immunity.").

Accordingly, claim nine, which was only brought against Annucci, is dismissed by the Court *sua sponte* under the Eleventh Amendment.

Second, the Court, as guided by precedent, turns to Defendant's argument regarding the lack of Plaintiff's standing to pursue First Amendment Retaliation Claims (the fifth and sixth claims for relief). At the motion to dismiss "stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove the allegations of his injury." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401-02 (2d Cir. 2015) (quoting *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003)). Rather, to survive a motion to dismiss for lack of subject-matter jurisdiction, Plaintiff need only "allege facts that affirmatively and plausibly suggest that [she] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *see also Franklin v. Whole Foods Mkt. Grp., Inc.*, No. 20-CV-04935, 2022 WL 256460, at *8 (S.D.N.Y. Jan. 26, 2022) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, although the factual allegations must be sufficient to put injury-in-fact into the realm of plausible." (internal citations and quotation marks omitted)).

Defendants challenge Plaintiff's standing to pursue retaliation claims on the basis of her husband's speech or retaliatory conduct that was directed at her husband. (Def. Br. at 14; Reply Br. at 11). As an initial matter, it is Plaintiff's complaints and threats of lawsuit, not her husband's, that is the speech at issue here. Additionally, that retaliatory conduct is aimed at her incarcerated husband rather than herself is not dispositive.  "The Second Circuit and courts within the Circuit have repeatedly recognized that a private citizen's First Amendment rights can be infringed by retaliatory actions carried out against a plaintiff's close kin." *Clark v. Boughton*, No. 21-CV-01372, 2022 WL 4778582, at *5 (D. Conn. Oct. 3, 2022). Here, Plaintiff sufficiently alleges retaliatory conduct aimed at both her and her husband, namely, that Defendants: (1) denied her access to medical treatment; (2) issued a false misbehavior report against her husband; (3) stole packages containing clothing and food items that Plaintiff sent to him; and (4) threatened that she would not be able to return to visit her husband.[4] (Am. Compl. at 7-8, 14)

Defendants further argue that Plaintiff cannot pursue these retaliation claims as a third party because she failed to allege any injury to herself or any constitutional injury to her husband. (Def. Br. at 14). Injury, in the First Amendment context, need not be related to the speech. *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ("A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing.") (emphasis in original).  Plaintiff alleges that while she was in pain, Defendants refused to provide her medical attention in retaliation for her complaints about being bitten. (Am. Compl. at 14). Additionally, Defendants allegedly stole food and clothing items from packages that she

---

[4] Threats may suffice as retaliatory conduct. *See Mateo v. Fischer*, 682 F. Supp.2d 423, 434 (S.D.N.Y. 2010) ("It is true that some verbal threats . . . can constitute an adverse action.").

had intended to be delivered to her incarcerated husband. (*Id*. at 8, 14). Plaintiff further alleges that she endured threats that she would not be able to return to visit her husband. (*Id*. at 7-8). On a Rule 12(b)(6) analysis, the Court finds these allegations are sufficient to confer standing.

II.   <u>Fed. R. Civ. P. 12(b)(5): Deficient Service of Process</u>

"Where a defendant moves for dismissal under Rules 12(b) . . . (5), and (6), 'the Court must first address the preliminary questions of service and personal jurisdiction.'" *Hertzner v. U.S. Postal Serv.*, No. 05-CV-869585, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007); *see also Arrowsmith v. United Press Int'l*, 320 F.2d 219, 234 (2d Cir. 1963) (remanding to district court to resolve issues relating to jurisdiction, "before any further consideration of the merits"). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2008) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Federal Rule of Civil Procedure 4(m) permits the Court to dismiss an action without prejudice against a defendant who was not served. *Hurd v. New York City Health & Hosp. Corp.*, No. 07-CV-03073, 2008 WL 2127659, at *1 (S.D.N.Y. May 20, 2008); *Salim*, 2018 WL 7133268, at *6.

A.   *Superintendent, the Director of OSI, and K-09-05.*

Plaintiff named the Superintendent, the Director of OSI, and K-09-05 as Defendants in her initial Complaint. (Doc. 1). The Court, by Order dated September 8, 2021, dismissed, *inter alia*, all claims against: (1) the Superintendent and the Director of OSI as lacking personal involvement in the events underling her claims; and (2) K-09-05 because it is not a "person" under § 1983 and does not have the capacity to be sued. (Doc. 4). Thus, no summonses were issued as to these Defendants and they were never served with process. Plaintiff named Superintendent and the Director of OSI again in her Amended Complaint, but those claims merely restated the same

allegations contained in the earlier Complaint as regards these Defendants. (Compare Doc. 1 at 2, 4-5 with Am. Compl. at 2, 7-8, 11-13). Plaintiff did not remedy the deficiencies highlighted in the Court's prior order, never requested the issuance of summonses for these Defendants, and therefore they are, again, dismissed from this action.

Because Plaintiff's first, fourth, ninth, tenth, and eleventh claims for relief were brought only against these dismissed Defendants and Annucci, those claims for relief are dismissed in their entirety. [5]

### B.   *Keyser*

Plaintiff's claims against Keyser are likewise dismissed due to deficient service of process. Keyser was named as a Defendant in Plaintiff's initial Complaint. (Doc. 1). A summons was issued to Keyser on September 9, 2021. (Doc. 5). On July 28, 2022, the Court extended the deadline to serve Keyser after Plaintiff indicated she was having difficulty effecting service and directed the Clerk of Court to issue a new summons for Keyser. (Docs. 19, 33, 36).  A new summons was issued on August 24, 2022 (Doc. 40). In October 2022, the Court granted Plaintiff a second extension of time to effect service and reminded Plaintiff that she was not proceeding *in forma pauperis* and therefore not entitled to assistance from the U.S. Marshal Service in effectuating service. (Doc. 45, 46). The deadline to serve Keyser expired on November 24, 2022. (Doc. 46).

---

[5] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'") (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005)); *see also Davis v. Cty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). The Court considered these allegations but finds that they are unavailing and do not remedy the deficiencies previously highlighted.

Plaintiff, in her opposition, contends that she was still in the process of serving Keyser as of October 26, 2022. (Pl. Opp. at 20). To date, no proof of service has been filed and there is no indication that Plaintiff has served Keyser.  Plaintiff's argument that the U.S. Marshals and Clerk of Court delayed service does not constitute good cause for her failure, as she was explicitly reminded that she was not entitled to assistance from the U.S. Marshals one month before the service deadline expired.

Because Plaintiff's second, seventh, and twelfth[6] claims for relief are asserted only against Keyser and/or the previously dismissed Defendant Director of OSI, those claims for relief are likewise dismissed. Plaintiff's third and eighth claims against Keyser are also denied.

III.  Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

A.  *Claims Proceeding Under 42 U.S.C. § 1983*

Plaintiff's remaining claims (third, fifth, sixth, and eighth) against the remaining movants, Malark and Preston, seek relief under 42 U.S.C. § 1983. (Am. Compl. at 1). That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares*, 2021 WL 2689736, at *6 (quoting *Santucci v.*

---

[6] The twelfth claim for relief is a Fourth Amendment unreasonable search claim asserted against Keyser. As set forth above, Keyser was dismissed for improper service. In any event the twelfth claim for relief would be dismissed on the merits because the alleged canine sniff at the prison does not constitute a search within the meaning of the Fourth Amendment. *See United States v. Iverson*, 897 F.3d 450, 461 (2d Cir. 2018); *see also United States v. McKenzie*, 13 F.4th 223, 233 (2d Cir. 2021), cert. denied, 213 L. Ed. 2d 1005, 142 S. Ct. 2766 (2022).

*Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The allegations here concern the Fourteenth Amendment.

   B.  *Third and Eighth Claims for Relief: Deliberate Indifference to a Serious Medical*
       *Need and Failure to Document Injuries*

Regarding the third cause of action, the Amended Complaint alleges that Plaintiff was not permitted to leave the facility for approximately one hour after being bit because a facility count was underway. (Am. Compl. at 5). Plaintiff argues, in light of her inability to leave and seek medical assistance, that Defendants violated her Fourteenth Amendment rights by refusing to provide medical attention for her injury. (Pl. Opp. at 5). *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").

Defendants argue that Plaintiff's deliberate indifference claim fails because there was no constitutional deprivation. To establish a violation of the Due Process Clause, Defendants' conduct must be "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018). "Negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Stovall v. Wilkins*, No. 15-CV-02163, 2016 WL 5478509, at *4 (S.D.N.Y. Sept. 29, 2016) (citing *Lewis*, 523 U.S. at 849). Plaintiff does not allege that Defendants intended for the dog to bite her. Rather, Keyser apologized and said the dog was not supposed to bite, indicating that this was an accident. (Am. Compl. at 5). Regardless of intention, taking into account the nature of Plaintiff's injury, the alleged one-hour delay in medical treatment was not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007). Indeed, "[n]othing about

[Defendants'] conduct, even in Plaintiff's version of the story, is 'repugnant to the conscience of mankind' or rises to the dignity of an Eighth Amendment violation." *Rivera v. Connolly*, No. 18-CV-03958, 2022 WL 1785313, at *5 (S.D.N.Y. June 1, 2022).

Further, "[t]o state a deliberate indifference claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." *King v. Falco*, No. 16-CV-06315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018). Under the first prong, the plaintiff's medical needs must be objectively "serious." *See Flemming v. Velardi*, No. 02-CV-04133, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To determine whether a plaintiff's medical needs are sufficiently serious, courts consider "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 701-02 (2d Cir. 1998) (internal quotations omitted).

Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A plaintiff can demonstrate deliberate indifference by alleging facts that demonstrate that a defendant "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's deliberate indifference claim fails at the first prong. The allegations in the Amended Complaint demonstrate that Plaintiff did not suffer a sufficiently serious injury to trigger constitutional protection. Plaintiff alleges that as a result of the dog bite, her "buttocks were hurting" and she was "shaken up". (Am. Compl. at 5). Plaintiff, in her opposition, described her

injury further, explaining that she had puncture marks, redness, and swelling on her buttocks and that she experienced pain, discomfort, headaches and a fever for several days thereafter. (Pl. Opp. at 6). She also stated that she experiences mental pain and anguish, including nightmares, heightened phobia of dogs, and increased anxiety. (*Id*.). However, Plaintiff's described injury as result of being bitten, without more, fails to satisfy the objective prong and, as such, her deliberate indifference claim is dismissed. *See Bradley v. Rell*, 703 F. Supp. 2d 109, 122 (N.D.N.Y. 2010) (finding the objective prong not established where the plaintiff suffered from a headache, blurry vision, swelling and bruising around the head, and an abrasion to his right lower leg from a dog bite, and where the plaintiff suffered later from "extreme headaches" and psychological problems); *Rown v. Annucci*, No, 19-CV-09048, 2021 WL 860189, at *5 (S.D.N.Y. Mar. 8, 2021) ("District courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black eyes, and other superficial injuries are not sufficiently serious to support a deliberate indifference claim.") (quoting *Morehouse v. Vasquez*, No. 17-CV-04836, 2020 WL 1049943, at *18 (S.D.N.Y. May 4, 2020)); *Sledge v. Bernstein*, No. 11-CV-07450, 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) ("[C]ourts in this district have held that terrible and extreme headaches and swelling do not satisfy the objective component of an Eighth Amendment claim."); *see also Adams v. Annucci*, No. 17-CV-03794, 2020 WL 1489787, at *12 (S.D.N.Y. Mar. 27, 2020) (dismissing claim for deliberate indifference to a serious medical need because "although Plaintiff alleges that he has suffered from headaches, backaches, stomach pains, sleeplessness, stress, and anxiety, such ailments, without more, fail to satisfy the objective requirement" (internal citations omitted)).

Even if Plaintiff had established that she suffered a sufficiently serious deprivation of medical care, the allegations do not support the subjective prong. The subjective prong requires that Plaintiff prove "that the defendant-official acted intentionally to impose the alleged condition,

or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020).

Although Plaintiff informed Defendants that she was bitten and requested medical attention, there are no allegations she communicated to them that it was an emergent medical condition nor that a one-hour delay in treatment would increase the severity of her injuries. (Am. Compl. at 5-7). Plaintiff's complaints that her buttocks were hurting simply do not rise to the level of risk of death, degeneration, or extreme pain required to state a claim for deliberate indifference. *Gilmore v. Rivera*, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014) (a substantial risk of serious injury is defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain"). Plaintiff's third claim for relief alleging deliberate indifference is therefore dismissed.

Plaintiff's allegations underlying the third claim for relief overlap with those underlying the eighth claim for relief alleging a failure to document injuries. Because these allegations fail to establish a constitutional violation, the eighth claim for relief is dismissed for the same reasons as the third. Moreover, and in any event, failure to investigate and document Plaintiff's injury is not, by itself, a cognizable constitutional claim. *Walton v. Lee,* No. 15-CV-03080, 2019 WL 1437912, at *5 (S.D.N.Y. Mar. 29, 2019).[7]

---

[7] Separately and independently, the third and eighth claims are dismissed against Keyser on the merits for the reasons stated herein as to Preston and Malark – specifically that that Plaintiff did not suffer a sufficiently serious medical injury and the failure to document medical injury is not a constitutional violation.

C. *Fifth and Sixth Claims for Relief: Retaliation*

Plaintiff alleges in her fifth and sixth claims for relief that she and her husband suffered First Amendment retaliation as a result of her complaints and threats of lawsuit stemming from being bitten by the K-9 dog.

Defendants argue that Plaintiff fails to state a claim for First Amendment retaliation on the merits. The Court agrees.

A private citizen asserting a First Amendment retaliation claim must establish that: "(1) [she] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [her] exercise of that right; and (3) the defendant's actions caused [her] some injury.'" *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *6 (S.D.N.Y. Jan. 8, 2021) (*citing Harenton Hotel, Inc. v. Vill. of Warsaw*, 749 F. App'x 17, 18 (2d Cir. 2018), *aff'd*, No. 21-1329-CV, 2022 WL 121281 (2d Cir. Jan. 13, 2022)). Plaintiff alleges that, as a result of her complaints and threats of a lawsuit regarding being bitten by the K-9 dog, Defendants took retaliatory action by denying her medical care, threatening to disallow her future visits to the facility, filing a false misbehavior report against her husband, and stealing packages she mailed to her husband. (Am. Compl. at 7-8, 14).

With respect to the first element, to constitute protected activity, the speech at issue must be on a matter of public concern. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) ("As a general rule, speech on 'any matter of political, social, or other concern to the community' is protected by the First Amendment.") (*quoting Connick v. Myers*, 461 U.S. 138, 146 (1983)). Plaintiff's complaints and threats to prison officials, however, pertain to her personal experience of being bitten by the K-9 dog and do not concern matters of public concern. *See Huth v. Haslun*, 598 F.3d 70, 75 (2d Cir. 2010) (finding plaintiff's complaint was not a matter of public concern

20

where it was "personal in nature and generally related to her own situation"); *cf. Cotarelo v. Vill.
of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir.2006) (finding that complaints did
qualify as speech on a matter of public concern because they concerned "discrimination problems
generally and were not limited to instances affecting only [plaintiff]"). Plaintiff's subsequent
requests for medical care do not otherwise constitute a protected activity. *See Gilmore v. Blair*,
No. 18-CV-00463, 2020 WL 5792467, at *5 (N.D.N.Y. June 30, 2020) ("Courts have not
recognized a freestanding right to request medical attention as a protected activity sufficient to
support a retaliation claim."), *adopted by* 2020 WL 5775203 (N.D.N.Y. Sept. 28, 2020).
Accordingly, Plaintiff's complaints, threats of a lawsuit, and requests for medical care were not
speech protected from retaliation by the First Amendment. The inquiry ends there.

However, even if Plaintiff's speech was protected, the claims fail because Plaintiff did not
plausibly allege that she was injured as a result of Defendant's retaliatory conduct. Notably,
Defendants' conduct toward Plaintiff and her husband did not chill Plaintiff's speech. After the
alleged retaliatory conduct occurred, including threats that she may not be able to return for a visit,
Plaintiff emailed OSI and DOCCS complaining about the incident and requesting an investigation.
(Am. Compl. 19-21, 31-32).  Plaintiff does not allege any emotional distress resulting those threats
and in fact returned to visit her husband at the facility many times thereafter. (Am. Compl. at 10).
*See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no change
in his behavior, he has quite plainly shown no chilling of his First Amendment right to free
speech."); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (a "naked assertion of a
chill" is insufficient to "defeat a Rule 12(b)(6) motion."). Additionally, with respect to Defendants
denying her medical care, Plaintiff does not provide allegations that her medical condition
worsened or that any injury was otherwise caused by the approximately one-hour delay.

Moreover, the theft of Plaintiff's packages from her incarcerated husband are insufficient to state a claim for retaliation. Courts have found in the prisoner context that deprivation of food brought by visitors is *de minimis* retaliatory conduct and would not chill a person of ordinary firmness from continuing to engage in First Amendment activity. *Amaker v. Annucci*, No. 14-CV-9692 (KMK), 2016 WL 5720798, at *5 (S.D.N.Y. Sept. 30, 2016). Plaintiff therefore fails to allege actionable injury as a result of the retaliatory conduct.

Plaintiff's fifth and sixth causes of action are, therefore, dismissed.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is GRANTED with prejudice as to Plaintiff's claims three, five, six, and eight, and without prejudice as to those claims dismissed for lack of standing or deficient service of process, namely claims one, two, four, seven, nine, ten, eleven, and twelve.

Although "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint," it is "not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). This action is dismissed with prejudice to the extent outlined above. Here, having already amended her Complaint once and having supplemented that amended pleading through her opposition on this motion, any further amendment would be futile. Accordingly, and although Plaintiff has not sought permission to do so, leave to file a Second Amended Complaint is denied.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 41, close this case, and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED:

Dated:   White Plains, New York
         May 15, 2023

PHILIP M. HALPERN
United States District Judge